0-4252 Roberta Lindenbaum v. Realgy LLC et al. Or arguments to be. 20 minutes to be shared by plaintiff and intervener. 20 minutes for defendants. Ms. Ellen L. Noble for the plaintiff Good morning. Ellen Noble for appellant Roberta Lindenbaum. I'd like to reserve three of the ten minutes for rebuttal. May it please the court. Last summer, the Supreme Court in Bar v. AAPC held that the government debt collection exception to the Telephone Consumer Protection Act's robocall restriction was unconstitutional but severable and that the robocall restriction should not be invalidated. The question in this appeal is whether Realgy can escape liability for violating the robocall restriction for five years just simply because a separate severable portion of the statute was invalidated. The answer is no and the answer is largely dictated by the Supreme Court's holding in AAPC. There, seven justices held that the wasn't an equitable remedy for the particular plaintiffs in the case. Because it was a determination of law, the Supreme under Harper v. Virginia Department of Taxation, that holding has to apply both prospectively and retroactively. That's a well-established legal principle that the district court overlooked. The district court specifically said that because statutes only apply prospectively, then the court's severability determination must also only apply moving forward. But the opposite is true. Judicial decisions apply retroactively because courts, unlike legislatures, determine what the law is and not what it should be. In addition to the Harper case, there's further older Supreme Court precedent that further confirms that the robocall restriction is retroactively valid. Those are cases like Eberle and Frost that stand for the proposition that when you graft an unconstitutional amendment onto an otherwise preexisting valid statute, that unconstitutional amendment is void ab initio. It was a nullity when enacted and cannot create harm on the original valid statute. It can't reverse that valid statute that was there to begin with. In addition, Justice Kavanaugh in footnote 12 of the plurality decision recognized this basic principle that judicial holdings apply retroactively. He expressly said that the decision today does not negate liability for robocalls that were made and covered by the robocall restriction between 2015 and 2020. Four other justices joined in judgment of the severability determination and never contested Justice Kavanaugh's characterization of what the court's decision means for cases pending on direct review. Realogy argues that there's differential treatment because government debt collectors may not be held fully liable for robocalls that occurred between 2015 and 2020. What's your client's position on that? Our position on that is that it's true that an independent preexisting doctrine, the fair notice doctrine, was unlawful during that time period. It's not that the law doesn't apply retroactively to both groups. It was unlawful for government debt collectors to make robocalls during that time period as well. The difference is they had a defense, a defense rooted in the Fifth Amendment due process clause and the fair notice doctrine because government debt collectors, unlike Realogy, lacked notice that their conduct was unlawful. They couldn't be penalized for that. The distinction or the disparate treatment happening there is not based off of the content of anybody's speech. It's based off of the fact that one group had fair notice of the law whereas government debt collectors lacked fair notice that their conduct was actually unlawful. Before that, does this boil down to the different ways your briefing explains the issue before us? You referenced the fact that there is a void amendment. The amendment to the statute was found to be unconstitutional. Your opposing counsel argues that the statute was unconstitutional. Is it that simple that what came to us is the amendment, the amendment says this, we're done? I think it is, Your Honor. You can look at the first paragraph of the holding in AAPC where they say, seven justices applying traditional severability principles held that the entire robocall restriction should not be invalidated. Realogy seems concerned in making the background principles behind that argument seem to be a concern that the effects of a constitutional violation cannot be entirely erased because you have this preexisting doctrine, the fair court's ability to enforce the law against government debt collectors. That's something that simply happens in the law sometimes due to preexisting legal doctrines. I think Sessions v. Morales-Santana speaks to that issue very well. In that case, there was a provision that said you need to be in the United States, citizens have to be in the United States for five years before their citizenship would transfer to children born abroad. There was an exception for unwed mothers. The court said that exception is unconstitutional but they severed it and they applied the higher five year residency requirement to everybody. In that case, just as in this case, there was a preexisting doctrine also rooted in due process that said courts can't strip citizenship away from children who benefited from that unconstitutional unwed mother exception. It's true that moving forward, everyone will be affected by the effects of that constitutional violation because there's this separate preexisting doctrine. That wasn't unconstitutional and the response to that, the response to that inequity from a new rule of law was not let's change the law. They said we know what Congress intended here so we need to impose that as a legal determination and there may be instances in which you've got separate independent doctrines that limit the ability to completely erase all the effects of the prior violation itself. What bothers me about your position is that the practical effect of the Supreme Court's decision is that certain speakers are allowed to make robocalls based on government speech and speakers that are not engaged in government speech are not allowed to and that seems to be a content restriction, albeit it came through the vehicle of a Supreme Court decision. How do you respond to that? You do have speakers being treated differently depending on the content of their speech by virtue of the way this decision has been rendered by the Supreme Court. Your Honor, I think you're right that this was just a decision that the Supreme Court has made. There were 17 pages of briefing arguing that when you have a content-based speech restriction, you should invalidate the whole restriction. The Supreme Court said no, we're not going to invalidate the whole restriction. The reason here is because that exception is so narrow, it doesn't call into doubt Congress's interest in the original valid statute to protect consumer privacy. Good morning, Your Honors. Lindsay Powell for the United States. May it please the Court, I want to pick up on the line of question that was raised about whether there's a view of this case that really comes down to whether the AAPC court invalidated just the exception to the robocall restriction or the restriction itself. The Court's opinion makes that very clear contrary to the things the defendant is saying in its brief here. I think at points in that brief, the defendant concedes that the case really does turn on that characterization. They note that in cases where a violation fell under the valid remainder of a statute, the violation can stand, notwithstanding that an invalid portion has been severed. That is this case. Realty's conduct fell under the valid portion of the broader robocall restriction and had nothing to do with the government debt exception. I really want to sort of parse the AAPC opinion and look at Graynett. What's the United States position on whether the government debt collectors can be penalized for the calls between 2005 and whenever it was invalidated? I think there are two pieces to this. As a statutory matter, after the AAPC decision, debt collectors making calls during that period from 2015 to 2020 can have violated the robocall restriction. So the government debt exception itself, the Court tells us very clearly over and over again, an unconstitutional provision is valid from the outside. It can never exist in tension, in conflict with the Constitution. So the government debt exception never existed. The government debt collars, although they didn't realize it at the time, never had the benefit of that. So they can violate the robocall restriction. But as Ms. Noble was explaining, and I think as the Court's footnote 12 gets at, principles of fair notice will likely in many cases operate to prevent penalizing those callers who had no way of knowing that their conduct was unlawful. When you say penalize, let's break it out. There's compensatory damages and there's penalties. So what's the government's position on that with respect to the government debt collectors? Your Honor, we haven't briefed that question in this case because it's not implicated by Realgy's conduct here. They're outside of that sphere of debt collectors acting there. We would be happy to follow up on that. There are certainly aspects of the TCPA that provide penalties that ring in quasi-criminal liability that are punitive. So certainly those doctrines would likely have some application in these cases. But for actors like Realgy, whose conduct had nothing to do with the government debt exception, their conduct not only was always unlawful, but they always knew of that unlawfulness. Coming back to my first point, if I may, the crucial part of the AAPC decision on this constitutionality question is Part 3A that's found at pages 2348 to 49. And so that's after the court in Part 2 has gone through and said the government debt exception is content-based and unconstitutional. And it comes before 3B where the court engages its severability analysis. And in 3A, the court takes on the precise question that was ingrained. Defendant says that Grain Ed is on all fours in this case. That in both cases you have a general prohibition that says you can't do this type of thing. In Grain Ed, the type of thing was picketing. In AAPC, the type of thing was robocalls. And then in both cases you have what is found to be a content-based exception. And whereas in Grain Ed, the court said this exception does two things. One, it's impermissible because it creates unequal treatment. The exception creates that unequal treatment. And two, the exception in Grain Ed, and this is, to get this analysis you have to look to Mosley, Grain Ed and Russell. I think your argument is that the statute itself doesn't discriminate between speakers because we're assuming this amendment has gone away. But what's bothering me is that the remedy is not the same. So there's got to be a different remedy, I believe you're referring to private debt collectors, than there would be for private debt collectors. Possibly, you know, you might be able to collect compensatories under some court's rulings against government debt collectors, but you could not collect punies against the government debt collectors. Whereas for private debt collectors, you can collect whatever. So that's the disparate treatment. It's the remedy. Yes, Your Honor. So why doesn't that violate the First Amendment? Yes, Your Honor. I think the fact that it is a remedy is why. So what we know from AAPC is that the statute, always, since 1991, has contained a content neutral robocall restriction. And that the content-based exception never took effect. So what authority do you have to say that a disparity in remedies between speakers does not violate the First Amendment? It's not anything in the statute. And defendant points to... We don't have any case law, though, from the Supreme Court or anywhere, saying that you have different remedies, that that really doesn't matter for purposes of the First Amendment. You have to look at the statute itself, whether or not you have underlying liability under the statute. So two things, Your Honor. Although the case name is not coming to me at the moment, I believe there are cases saying that a disparate impact in the First Amendment context is not, per se, problematic, that when we're talking about whether something is content-based and for that unequal treatment, you're looking to a statute on its face. And again, here, the statute is content-neutral after the AAP decision. We know that it has always been content-neutral from that decision. And the authority that is lacking, and to my knowledge, just doesn't exist anywhere, it's anything saying that the application of due process principles can offend the First Amendment. And that is the thrust of defendant's position in this respect. The First Amendment can supersede the due process fair notice rights of others? Yes, Your Honor. That would be another way of looking at it. But the essential thing here is we have a statute that we now know has always been content-neutral, that we've always had the robocall restriction without the government exception ever having an effect. So that is a content-neutral statute. And there's no authority suggesting, whether it's the application of these due process principles can intersect with the First Amendment in a way that makes this problematic. This is not unequal treatment. It's equal treatment based on who had notice, who had reason to know that their conduct was unlawful. And those two principles of equal treatment of speakers and of equal treatment of parties at suit based on their knowledge of what the content-based exception is, is so crucial. And I really think that defendant's case falls on this point. They say that this case is just like Grain Ed. And the thing I was trying to show there is that Grain Ed, through Mosley, specifically says the exception there caused the court to doubt the entire project. So there are cases where a content-based exception renders the whole invalid. And defendant's case is based on the idea that that was true in AAPC. But if you look at Part 3A of Justice Kavanaugh's opinion, at pages 23, 48 to 49, he expressly rejects that argument. He says it is true that the court has recognized that exceptions to a speech restriction may diminish the credibility of the government's rationale for restricting speech in the first place. But here, Congress's addition of the government debt exception in 2015 does not cause us to undermine privacy. And that's for three justices. Justice Breyer, for another three, says the government debt exception provides no basis for undermining the general cell phone call restriction. So we know that this case is not Grain Ed. In Grain Ed, the entire thing was invalid. If the entire robocall restriction had been held invalid in AAPC, this would be a different case. A court can't bring an invalid provision back to life. There would be no severability analysis if that had been the court's holding. And that's why this analysis is in 3A, prior to the severability analysis in 3B. If the whole thing is unconstitutional, you can't reconstitutionalize it by severing the offending part. And that really does decide this case, knowing that all along, since 1991, the robocall restriction has been in effect, that the government debt exception never took effect. That's enough here to confirm that real justice conduct has always been unlawful under this provision. There is a quibble in the briefing about whether the court really means it when it says that an unconstitutional amendment never has effect, whether something can really be void ab initio. And I wanted to note that the Supreme Court, Justice Alito writing for a majority, just confirmed this point very clearly in the Collins decision, excuse me, where he says, an unconstitutional provision is never part of the body of governing law because the Constitution automatically displaces any conflicting statutory provision from the moment of its enactment. So we know that unconstitutional amendment, which granted the court didn't get to say was unconstitutional until 2020, but when it says that, when it holds that it was unconstitutional, that means it's always been unconstitutional. It never took effect. So these holdings together, that the provision never took effect, the offending provision, and that the basis to confirm that real G can be held liable for having violated it. And just to recap, there's no unequal treatment there with the possibility that others may not be penalized in the same way based on the content-neutral application of due process principles, fair notice principles, and other cases. Thank you. Good morning, your honors. May it please the court. My name is Ryan Watstein, here for Appellee Real G. I want to start by summarizing the other side's argument. The government gets to enact content-discriminatory speech regimes and enforce against their opponents long periods of content discrimination that we know to be illegal, all the way until the Supreme Court, many years later, fixes the problem by severance. And because of their universal interpretation of severance that cuts directly against what the Supreme Court did in Morales-Santana in 2017, the government gets exactly what it wants in the interim period. A content-discriminatory regime without any consequence. Think about that for a moment. Here's my concern. It sounds to me like your argument is that your constitutional issue trumps due process. And haven't we always recognized that there is an interplay between constitutional rights? Why would your issue be able to take away the constitutional protection of fair notice and due process? Why does it supersede that right? It does not. If the court properly applies controlling authority in the severability arena, it will conclude that AAP's severance of the government debt exception must, as a matter of law, have been prospective. Must have. What that means is that the statute per Part 2, not the entire statute, but the robocall restriction per Part 2 of AAPC, was unconstitutional at the time of Realgy's speech. Counsel, I think you're trying to argue, so the notice, I think under your view, you deal with the due process notice problem of the government debt collectors by just eliminating the statute for everyone, right? Because then you deal with their due process problem that way, because they won't be held liable for that period. But you also want to have the benefit of it as the non-government debt collectors. Isn't that basically what you're arguing for? Not exactly. But sort of. The First Amendment doesn't trump the due process under your solution. But the problem I'm having with your position is you never had anything from Congress saying private debt collectors are exempt. The government debt collectors did have something from Congress saying that. Now we now know that that amendment was not valid, but they do have a little bit longer leg to stand on of saying fair notice, because they, after all, had a statute saying that they were exempt. You never had that. I mean, from the very beginning, the statute always said private debt collectors had liability. Let me be clear about what our position is with respect to severability. Our position is that severability was prospective and must be prospective as a matter of law. You never get to the question of whether government debt collectors may be prosecuted in a litigation down the road. There will never be anybody in this courtroom that's a government debt collector arguing that I should be allowed to take advantage of the fair notice doctrine. The reason for that is binding Supreme Court precedent makes clear that this Court must, at the severability stage, at determining whether severability applies prospectively or retroactively, it must make that determination at this stage. If the Court concludes that severance is retroactive, it would be doing more than Congress purported to do via severability clause, and it would also be doing more than Congress could have done via severability clause. That would violate separation of powers two times over. It is appellants... Supreme Court cases that make this clear as a matter of controlling authority. Under Landgraf and Rivers, if Congress doesn't say it wants retroactive liability, we must assume Congress did not want retroactive liability. We must. Here in the severability clause, Congress said nothing about wanting as option number two retroactive bankrupting liability for all of its debt collectors. By the way, there are criminal penalties available under the TCPA. The distinction is you were aware during all that time period, your client was aware of those criminal penalties and the violation that was being undertaken. I'm struggling with your argument that this is a ruinous liability when in fact your client was fully aware of the dangers of violating this statute. Your Honor, two points there. Number one, and this isn't really before the Court, but I just want to mention it because it's true. Our client did not violate the statute. This is a motion to dismiss that we filed as a matter of law because we believe our First Amendment case law is unanimous. If the speech restriction is content discriminatory as a matter of historical fact, at the time of the speech, the conviction, the prosecution cannot stand. We're back to the very same issue that I asked early on. Your briefing argues on the basis of the unconstitutionality of the statute. Granted, it was about the entire ordinance, but what was the certified question to the Supreme Court in this case, in the AACP case? What was the certified question? So I believe the certified question was whether the government debt exception violates the Constitution. Exactly. It was not a question of whether the ordinance or the entire statute itself was unconstitutional. That is the governing question that the Supreme Court answered. So it seems to me, granted, it just doesn't apply. It is about the entirety of an ordinance. We are here about the severability of a component of the statute. I just don't see the Supreme Court answering the questions that you say, because I'm looking at the question the Supreme Court asked, I'm looking at the questions that the Supreme Court answered, and it doesn't apply to your argument. Your Honor, I respectfully, completely disagree. Number one, I believe that Grainette is controlling authority. There was a severability clause in the statute in Grainette. The legislature did remove the exception that caused the constitutional infirmity. There may be academic differences, but there is no functional difference between our case and Grainette. If appellants were right about this case, Grainette would have been decided differently. There was a severability clause. It was an exception that caused the unconstitutionality. But now we're back to the question of you are basing your argument on some smaller component of the statute itself. I'm looking at what the court addressed. The court addressed in Grainette, is this entire ordinance good or isn't it? And here, that's not the question we're asking. We are asking here, what happened, what is the propriety of the amendment itself? And the answer of the Supreme Court was, this amendment is improper. And the remainder, void ab initio, and the remainder of that statute began legally, preceded legally, and is enforceable legally. The only way that that even comes up is your argument that well, this is not fair to me, because the government got to do it at a time. But that's, to me, that's the meat and potatoes of decision making all the time. Because the question is not, was this entire statute unconstitutional? The question is, is there another constitutional protection of which I may avail myself? And the government has something else. You don't. Realty does not have a different exception because it was on notice from the beginning. And it seems to me that that is, that's an honest distinction between your argument and what the court was in fact doing in this case. Why is that not accurate? Because that doesn't matter. What matters under GRAINED, which was reaffirmed by Morales-Santana in 2017, is whether the restriction that existed as a matter of historical fact was content discriminatory at the time of the speech. In RAV, the defendant burned a cross in the minority. It was reprehensible. That didn't matter. All that mattered is that statute that he was prosecuted under was content discriminatory. The Supreme Court's cases make clear that is what matters. This is what the GRAINED case said. The GRAINED said that. It said the entire ordinance was. But how do you account for the Frost case beginning in 1929, now reaffirmed in Collins v. Yellen in 2021, that looks to conflicting statutory provisions, that looks to, Frost began clearly held unconstitutional amendments are a nullity, wholly without force or validity, leaving the provisions of the amendment issue again, not the entirety of the statute? May I respond to that? Please. This legal fiction of void ab initio, let me make something clear. I agree with the basic principle that an unconstitutional law, whether it's by amendment or otherwise, is in an abstract sense void ab initio. The Constitution displaces the law. But that doesn't mean that unconstitutional laws don't exist for long periods of time. Take AAPC, for example. The entire reason the Supreme Court went through the severability analysis is because if it hadn't done that, the restriction would have fallen. The restriction is what was unconstitutional. This Court's case law makes clear it's not the exception, it's the restriction. In fact, there was just a case, Lyons Den Adult Superstore, which couldn't have been clearer on that point. I know, Judge Stranch, that you have many First Amendment cases as well. The Court always concentrates on the restriction. If the Supreme Court hadn't saved the restriction, it would have been unconstitutional, even though it was added by amendment. The void ab initio language does not suggest that it never existed. The government debt exception never existed in the first place. There's no case that stands for that proposition, including the Supreme Court's recent cases. Again, going back to the Graynett point... Well, Collins kind of says that. The Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment, such that it was never really part of the body of governing law. Right, but not that there wasn't a constitutional harm that occurred while the amendment existed as a matter of law. That was Justice Thomas' suggestion that was rejected by the Supreme Court by seven justices. Gorsuch even criticized it and said, we've never gone there. Yes, it's void ab initio, but we don't act like it never existed. The constitutional, as the government said in the first argument today, the remedy must be tailored to the constitutional harm. In the content discrimination First Amendment context, there is not a single case in history that applied a content discriminatory restriction that was content discriminatory as a historical fact to impose liability. This court would be the first court of appeals ever in history to reach that conclusion. It would cut directly against not only Graynett, but what a unanimous other than two justices concurring in the judgment, Supreme Court said in Morales-Santana. Morales-Santana reaffirmed Graynett and said, a defendant in that circumstance, the same circumstance my client is in, could not be prosecuted, and I quote, regardless of whether the legislature likely would have cured the infirmity by excising the exemption. Justice Ginsburg dropped that footnote off the discussion of judicial severance. That quote is the definition of the judicial severability doctrine. What the Supreme Court said, and this controls this court, is it doesn't matter, quote, whether the legislature likely would have cured, i.e. by a judicial severance directive and a severability clause, the infirmity by excising the exemption. That does not matter under binding authority. They have no cases to the contrary. And if I may go back to the severability analysis, what they want you to do, what the appellant wants this court to do, is to skip the severability analysis. Don't determine, put blinders on, and don't determine whether there are constitutional barriers to retroactive severability in this case that involves a conduct permitting exception, which makes this case very unique. If the court, though, follows Landgraf and Rivers, it must reach the conclusion, just like the Morales-Santana court did, that Congress did not intend severance to apply retroactively. Think about this for a moment. If Congress had come in... Is there any authority where Landgraf and Rivers have been applied to a severability clause? No, Your Honor, but there's no distinction, because the court's job in applying a severability doctrine is to do exactly what Congress would want to do via severability clause, as constrained by the Constitution. But the court can sever a provision regardless of whether or not the legislature even has a severability clause. Wouldn't you agree with that? I would agree with that, but the court shouldn't and couldn't sever a provision if the legislature said you can't do it. And if the legislature had directed... Your position is Congress had to explicitly say that, I guess in the 1930s or whenever, the severability clause came into the statute, that if any of these provisions are ever severed, it would apply retroactively. Is that what your position is? No, not that they would have had to do it in 1930. Well, that's when the severability clause went into effect, isn't it? Yes, but they could have amended that when they added the TCPA. I mean, this is, you know, Congress has the most sophisticated of lawyers. They knew that they were potentially creating a problem here, with the government debt exception. They could have given instructions to the court. That is what is required under Landgraf and Rivers, but separate and apart from Landgraf and Rivers, Morales-Santana dictates... Your position is any time there's a severance of a statute, unless Congress has explicitly said it's retroactive, it has to be prospective. No. The difference is this case involves a conduct-permitting exception. This case is very unique. In most cases of severance, you would be allowing more conduct. In this case, you're severing an exception that companies and people... You're getting out of Landgraf and Rivers that nuance about conduct-permitting exception. Because the fact that you are severing a conduct-permitting exception is what imposes the retroactive liability. Landgraf and Rivers don't come into play if you're just doing a normal severability analysis with a conduct-prohibiting provision, like a statutory provision that says it's illegal to do X. If you sever that, you don't have any Landgraf or Rivers problem. You only have severability... We want you to find that Congress wanted a conduct-permitting exception to be severed retroactively, making conduct that was expressly legal, expressly made legal by Congress, illegal. Even setting aside Landgraf and Rivers, though, there's another controlling Supreme Court case that compels the conclusion that Congress could not have done what they want this court to do via severability clause. Footnote 12 seems to assume that this Landgraf and Rivers doctrine is not going to apply here. Wouldn't you agree? That's the danger of one-sentence dicta without any discussion or briefing or argument on Landgraf and Rivers. Footnote 12, if read as appellant urges, contradicts the majority decision in AAPC, as many district judges have recognized, even when siding against our argument. They've called it a paradox. They've called it a quandary. They've called it everything else. One judge said the Supreme Court has done a disservice. The Creasy judge said that the Supreme Court did a disservice. The bottom line is, we don't think footnote 12 means what they think it means. We in the Supreme Court don't think it means to contradict the majority holding. But even if it means exactly what appellant contends, it's dicta of three justices that's no more persuasive than dicta in a dissent, particularly given that the court would have had to effectively overrule Greenhead, Morales-Santana, Landgraf, Rivers, many, many Supreme Court cases. I see my time is up. May I conclude? Well, your time is up. You have concluded, I believe. Thank you. Your Honors, Realty repeatedly argues that it's the restriction, not the exception. That's exactly the argument the respondents made in AAPC. And only one justice, Justice Scorsese, in his dissent agreed with them. All of the other justices said, no, it's just the exception. Realty cites cases like Landgraf and Rivers. Those cases are wholly in opposite. Those are about the retroactive application of a statute passed by Congress. They say nothing about the retroactive application of a judicial holding, a determination of law. And the court has repeatedly said that those are two wildly different things, because courts are not engaged in an exercise of mimicking Congress and deciding what the law should be tomorrow. They're deciding what the law already says. The other cases Realty relies on- What it constitutionally may say. Correct. The ability to declare an act constitutional. I'm struggling with some of these arguments, which I felt were really resolved by Marbury v. Madison a long time ago. The courts being an equal branch to the legislature, not a subservient branch. So any further analysis you have along that line might be helpful to us. I'm struggling with the argument. That's absolutely correct. And I would just say all the other cases that are being cited by Realty like Granad or RAV, the cross-burning case. All of those cases, the court held that the rule, the speech restriction, was not just under-inclusive. They said it was over-inclusive, that it restricted more speech than necessary. And in city of Liddell, the court said there's two ways in which a content-based speech restriction is unconstitutional. One is it restricts too much speech, and you've got to invalidate the whole regulation. The other is there's an exception and it's simply under-inclusive, and there you can sever the exception. Judge Bush, you said they're dealing with the due process problem by simply retroactively invalidating the statute. And that's correct. And that's exactly what Harper says you cannot do as a remedial exercise, just a remedy in terms of an equitable remedy. Justice Scalia's concurrence in Reynoldsville casket directly addresses that issue. And it says courts cannot recast the non-retroactive application of a statute as an equitable remedy to fix these kind of equitable concerns, because that would be a complete end run around the Harper rule. Instead, the court has to apply the law and engage in a severability analysis that is a matter of statutory interpretation. Judge Bush, you also asked if there are cases where the remedy results in different treatment for different groups. AAPC is the first time this has happened in the First Amendment context, but this has happened in the equal protection context. And cases you can look at are Eberle and Morales-Santana, the more recent case. In Eberle, beer brewers' convictions were upheld even though there was an unconstitutional amendment for wine and cider makers at the same time. And they still convicted the beer brewers because they said those unconstitutional amendments were void ab initio, and they don't change the liability. Here, the harm is no different because but for the unconstitutional violation in this case, Realogy would still have been liable because there is still a robocall restriction. I see my time is up.